# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:20-mj-00077-SAB-1 |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION TO STAY |
| v. | (ECF No. 32) |
| JAMES LEE NOVAK, | |
| Defendant. | |

Currently before the Court is Defendant James Lee Novak's motion to stay sentence and probation revocation proceedings, filed on November 1, 2022.  (ECF No. 32.)  For the reasons explained herein, Defendant's motion shall be denied.

## I.

## BACKGROUND

On July 23, 2020, Defendant was charged in a criminal complaint with: (1) exceeding the posted speed limit, in violation of 36 C.F.R. §4.21(c); and (2) operating a motor vehicle while driver's license is suspended for a conviction of operating a motor vehicle under the influence of alcohol with knowledge of the suspension, in violation of 36 C.F.R. § 4.2 and California Vehicle Code 14601.2(a), in Sequoia National Park.  (ECF No. 1.)  On November 19, 2020, Defendant pleaded guilty to both counts charged in the criminal complaint.  (ECF No. 15.)  After Defendant's plea, the parties proceeded to immediate sentencing.  (Transcript of Proceedings

1

("Tr.") at 15, November 19, 2020, docketed at ECF No. 19 in Case No. 1:20-cr-00230-ADA-1.) Pursuant to the oral plea agreement, the parties both recommended that the Court sentence Defendant to pay a $580.00 fine plus special assessments, and submit to 12 months of probation. (Id. at 2, 16.)   The Court indicated it was not inclined to follow the parties' recommended sentence, explaining that the recommended sentence was more lenient than those typically imposed in similar cases, and expressed concern about Defendant's criminal history.[1]  (Tr. at 17-20.)   After hearing from defense counsel and Defendant, the Court proceeded to impose a sentence of 24 months' probation and a $1200 fine plus special assessments, with monthly payments commencing on December 15, 2020.  (Tr. at 20.)  The Court further ordered Defendant to notify the Court of any material change in his economic circumstance, and set a probation review hearing for November 18, 2021.  (Tr. at 20; ECF No. 14.)

Defendant filed a notice of appeal to the District Court on December 3, 2020.  (ECF No. 16; Case No. 1:20-cr-00230-ADA, ECF No. 16.)  The appeal was initially assigned to District Judge Dale A. Drozd.  (Id.)  In the opening brief filed on February 1, 2021, Defendant asserted that his sentence was procedurally flawed and substantively unreasonable because the Court had imposed a sentence based on Defendant's indigency.  (Case No. 1:20-cr-00230-ADA, ECF No. 24.)  The Government did not file an opposition or answering brief to the Defendant's opening brief.  Defendant did not file a motion to stay his sentence pending the appeal before the District Judge.

On November 4, 2021, in advance of the November 18, 2021, probation review hearing, Defendant filed a status report indicating he had not paid his fine as ordered.  (ECF No. 17.) Defense counsel and the Government then entered into and filed a joint stipulation requesting the Court allow Defendant until October 2022 to pay his fine, and to increase his fine $380, raising the total financial obligation to $1500.  (ECF No. 18.)  In lieu of adopting the joint stipulation, the Court referred the matter to Probation for the preparation of a probation violation petition.

---

[1] Defendant was previously convicted of first degree burglary in violation of California Penal Code §460(a) on June 20, 2019, and driving under the influence of alcohol (DUI) on August 9, 2019.  (Tr. 15.)  Defendant was sentenced to 1 year of jail and 36 months of probation for the burglary charge and 5 days jail and 36 months of probation for the DUI.  (Id.)

1    On December 6, 2021, before the appeal of his sentence had been decided by the District Judge,

2    this Court issued an arrest warrant for Defendant's arrest following the submission of a Form

3    12C Probation Revocation Petition by the Probation Office (the "Petition"). (ECF No. 21.) The

4    Petition alleged that Defendant failed to pay his total financial obligation of $1,220 as ordered by

5    the Court as part of his sentence. On January 20, 2022, Defendant made an initial appearance on

6    the Petition and denied the sole charge. (ECF No. 23).

7        On August 24, 2022, the appeal action was reassigned to District Judge Ana de Alba

8    following her appointment as a District Judge. (Case No. 1:20-cr-00230-ADA, ECF No. 28.)

9    On September 28, 2022, the District Court denied Defendant's appeal of his sentence by written

10    order. (Case No. 1:20-cr-00230-ADA, ECF No. 28.) Defendant filed a notice of appeal to the

11    Ninth Circuit on October 11, 2022, and an opening brief is due on January 10, 2023. (See Case

12    No. 1:20-cr-00230-ADA, ECF Nos. 29, 30, 31; United States v. James Lee Novak, Case No. 22-

13    10263 (9th Cir.).)

14        On October 20, 2022, during a status conference, Defendant moved to stay the sentence

15    due to the pending appeal to the Ninth Circuit. (ECF No. 31.) The court requested briefing on

16    the matter and set a briefing schedule. (Id.) On November 1, 2022, the Defendant filed the

17    instant motion, asking the Court to stay the imposition of his sentence and revocation

18    proceedings. (Def.'s Mot. Stay ("Mot."), ECF No. 32.) On November 4, 2022, the Government

19    filed an opposition to the motion to stay. (Govt.'s Opp'n Mot. ("Opp'n"), ECF No. 34.) On

20    November 9, 2022, the Court held a status conference and heard oral argument on the

21    Defendant's motion to stay. (ECF No. 35.) The Court took the matter under submission, and set

22    a contested hearing for November 17, 2022. (Id.)

23    **II.**

24    **LEGAL STANDARD**

25    A term of probation may be continued or revoked as follows:

26        **(a) Continuation or revocation.**--If the defendant violates a
condition of probation at any time prior to the expiration or

27    termination of the term of probation, the court may, after a hearing
pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure,

28    and after considering the factors set forth in section 3553(a) to the

extent that they are applicable—

    **(1)** continue him on probation, with or without extending the term or modifying or enlarging the conditions; or

    **(2)** revoke the sentence of probation and resentence the defendant under subchapter A.

18 U.S.C. § 3565(a).  Additionally, "[t]he court may modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the conditions of probation."  18 U.S.C. § 3563(c).

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58, 103 S. Ct. 400, 402, 74 L. Ed. 2d 225 (1982).  "This is a judge-made rule and the principle of divestiture is not absolute; there are exceptions."  United States v. Phelps, 283 F.3d 1176, 1181 n.5 (9th Cir. 2002) (citation omitted).  "The purpose of the rule is to promote judicial economy and avoid the confusion of having the same issues before two courts simultaneously."  Id.

Federal Rule of Criminal Procedure 38 provides that "[i]f the defendant appeals, the district court, or the court of appeals under Federal Rule of Appellate Procedure 8, may stay a sentence to pay a fine or a fine and costs."  Fed. R. Crim. P. 38(c).  Further, as to probation, Rule 38 provides that "[i]f the defendant appeals, the court may stay a sentence of probation [and] [t]he court must set the terms of any stay."  Fed. R. Crim. P. 38(d).

### III.

### DISCUSSION

Defendant argues the Court lacks jurisdiction to act on the Form 12C Petition, and that even if the Court had jurisdiction, the Court should grant a stay pursuant to Federal Rule of Criminal Procedure 38.  The Government responds that the differing nature of Defendant's appeal and the matters currently before this Court, as well as the plain language of Rule 38 of the Criminal Rules of Criminal Procedure, support denial of the motion.  (Opp'n 3.)

### A.   Whether the Court has Jurisdiction

1.   The Parties' Arguments

Defendant argues that this Court lacks jurisdiction to further adjudicate the Form 12C Petition because the alleged violation goes to the very heart of Defendant's appeal; specifically the alleged probation violation of not paying his fine on time are "aspects of the case involved in the appeal." Griggs, 459 U.S. at 58.  Defendant submits he has appealed his sentence as both procedurally flawed and substantively unreasonable arguing the Magistrate Judge imposed a harsher sentence (an increased term of probation and a higher fine than what was agreed upon by the parties based on Defendant's lack of ability to pay) based on Defendant's socioeconomic circumstances.  (Mot. 4.)  Defendant contends that if the Ninth Circuit were to grant the relief requested and vacate both the imposition of a two year term of probation and the fine, there could be no violation of probation and the Petition would be moot.  (Id.)  On the other hand, Defendant suggests that if the Court were to proceed with adjudicating the Petition notwithstanding the lack of jurisdiction and either revoke or extend the term of probation and/or increase his fine amount beyond where it stands currently, these actions would only add to the basis for Defendant's pending appeal, and thus the alleged probation violation is an aspect of the case involved in the appeal.  (Id.)

Defendant states that courts have held that a lower court does not have jurisdiction once the defendant has appealed an aspect of his sentence being challenged, highlighting that in United States v. Najjor, 255 F.3d 979, 982-83 (9th Cir. 2001), the Ninth Circuit held the district court did not have jurisdiction to modify the restitution aspect of the defendant's sentence, which he had appealed, even though the district court indicated at the original sentencing hearing that it wished to reconsider the restitution ordered as part of the defendant's sentence.  Defendant directs the Court to United States v. Ransom. 866 F.2d 574, 575 (2d Cir. 1989), for the proposition that court held a district court did not have jurisdiction to amend a sentence to remove a term of supervised release, among other things, when a notice of appeal of the sentence had been filed, even where its action benefitted the defendant.  Further, Defendant highlights that recently under the First Step Act, numerous courts, including a court in the Eastern District of

1   California, have held that they did not have jurisdiction to consider the defendant's motion to

2   reduce a sentence when the underlying sentence was being appealed.   United States v.

3   Melkonyan, No. 2:14-CR-0083-JAM, 2020 WL 2128591, at *1 (E.D. Cal. May 5, 2020); United

4   States v. Velazquez, No. CR-12-00877-004- PHX-NVW, 2020 WL 5846612, at *2 (D. Ariz.

5   Oct. 1, 2020) (collecting cases); United States v. Hirano, No. CR 99-00465 JAO, 2022 WL

6   1540230, at *2 (D. Haw. May 16, 2022).

7         The Government responds that the issues appealed to the Ninth Circuit are not the same

8   as those that are currently before the Court.  See Phelps, 283 F.3d at 1181 n.5 (explaining that the

9   general rule of divesture of jurisdiction on appeal is not absolute and was designed to "promote

10  judicial economy and avoid the confusion of having the same issues before two courts

11  simultaneously.").  Specifically, the Government argues the issue on appeal relates to whether

12  the imposed fine and sentence are appropriate under applicable law, whereas the issue before this

13  Court relates to whether the Defendant is in violation of his fine and sentence.  (Opp'n 3.)  The

14  Government specifies that while adjudication of both issues requires looking to the imposed fine

15  and sentence, this Court will not be passing judgment on the validity of the underlying sentence

16  when  adjudicating  Defendant's  probation  violation.     United  States  v.  Jordan,  No.

17  213CR00221APGCWH, 2021 WL 3612400, at *1 (D. Nev. Aug. 13, 2021) ("Thus, divestment

18  of jurisdiction 'does not apply to collateral matters not affecting the questions presented on

19  appeal.' " (quoting Weaver v. Fla. Power & Light Co., 172 F.3d 771, 773 (11th Cir. 1999)));

20  United States v. Queen, 433 F.3d 1076, 1078 (8th Cir. 2006) ("District courts retain jurisdiction

21  to enforce their orders when the same issues are not simultaneously before the district court and

22  appellate court.") (citing Phelps, 283 F.3d at 1180–81 n. 5; Doe 1–13 v. Bush, 261 F.3d 1037,

23  1064 (11th Cir.2001)).

24        The Government also argues that Rule 38 provides additional support that the Court

25  retains jurisdiction to adjudicate probation violations in appropriate cases, as the Rule provides

26  that a court "may" stay imposition of probation or a fine during the pendency of an appeal.  See

27  Fed. R. Crim. P. 38(c)-(d).  The Government contends the permissive language of Rule 38 would

28  make no sense, if as Defendant urges, the filing of any sentencing appeal deprives a lower court

1  of the ability to adjudicate probation and fine-related issues in all instances.  (Opp'n 3.)

2         2.      The Court Finds it Maintains Jurisdiction to Adjudicate the Petition

3         The Court finds the Government's position more supported in light of the Court's review

4  of the relevant statutes, rules, and additional caselaw, and concludes it maintains jurisdiction to

5  adjudicate the Form 12C Petition.

6         The Court first considers the Ninth Circuit's discussion in <u>Phelps</u>.  The conditional

7  release statute at issue there governs release of mentality ill persons acquitted of an offense by

8  reason of insanity, allows for monitoring for public safety by the court, and provides the court

9  can "at any time" modify the conditions of release.  <u>See</u> 18 U.S.C. § 4243(f) ("The court at any

10  time may, after a hearing employing the same criteria, modify or eliminate the regimen of

11  medical, psychiatric, or psychological care or treatment.").  The Ninth Circuit, acknowledging

12  <u>Griggs</u>, noted the statutory scheme required some fluidity, and that the conditional release was

13  not equivalent to a normal final judgment in a civil action, but more akin to that of appeals of

14  temporary and permanent injunctions:

15         Neither party raised the issue of whether the appeal of the first
       release order divested the district court of jurisdiction to modify
16         the conditions of release while that order was on appeal . . .

17         . . . The general rule is that once a notice of appeal has been filed
       the district court is divested of jurisdiction over the matters being
18         appealed. *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56,
       58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). This is a judge-made
19         rule and the principle of divestiture is not absolute; there are
       exceptions. *Natural Res. Def. Council v. Southwest Marine,*
20         *Inc.,* 242 F.3d 1163, 1166 (9th Cir.2001). The purpose of the rule
       is to promote judicial economy and avoid the confusion of having
21         the same issues before two courts simultaneously. *Id.*

22         In this case the statute that governs the conditional release of a
       mentally ill person who has been acquitted of an offense only by
23         reason of insanity provides for monitoring for public safety by the
       court. The court sets the initial conditions, but may at any time,
24         after an appropriate hearing, modify those conditions. 18 U.S.C. §
       4243(f). The original conditions for release were set forth in the
25         order under appeal in case number 99–10042. That appeal
       concerns the enforceability of those conditions.
26
       By the very nature of conditions for release of a mentally ill person
27         in this circumstance, some fluidity is required, and is desirable, in
       order to achieve the objectives of the statutory requirements. This
28         is not equivalent to the normal final judgment in a civil action; it is

more akin to the process followed with regard to the appeal of temporary and permanent injunctions. See *Natural Res.*, 242 F.3d at 1166.

If new conditions of release are prescribed in a subsequent order, these can be addressed in a subsequent appeal, as was done in this case. If some of the conditions of the original order are removed by the district court prior to the appeal being heard, those issues simply become moot on appeal. The fact that an appeal of a release order does not divest the trial court of all jurisdiction to continue to monitor the release conditions does not frustrate the purpose of divestiture rule, because the same issues are not before two different courts simultaneously. Thus, the district court was not divested of jurisdiction to continue to monitor the release conditions in this case and we have appellate jurisdiction of case number 99–10042 as well as case number 01–10119.

Phelps, 283 F.3d at 1181 n.5.

The Court finds the Ninth Circuit's discussion to be instructive here as the probation statutes' language is similar to the statute's language considered by the Ninth Circuit in Phelps. Significantly, Section 3565 provides that if "the defendant violates a condition of probation **at any time** prior to the expiration or termination of the term of probation, the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in section 3553(a) to the extent that they are applicable--(1) continue him on probation, with or without extending the term or modifying or enlarging the conditions; or (2) revoke the sentence of probation and resentence the defendant under subchapter A." 18 U.S.C. § 3565(a)(1)-(2) (emphasis added). Additionally, Section 3563 provides that the "court may modify, reduce, or enlarge the conditions of a sentence of probation **at any time** prior to the expiration or termination of the term of probation, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the conditions of probation." 18 U.S.C. § 3563(c) (emphasis added).

The Court further finds it appropriate extend the principle of maintaining the status quo, to the situation at hand here. See Phelps, 283 F.3d at 1181 n.5; Nat. Res. Def. Council, Inc. v. Sw. Marine Inc., 242 F.3d 1163, 1166–67 (9th Cir. 2001) ("We conclude that the district court possessed jurisdiction to modify the injunction while the consolidated appeal was pending, because the changes preserved the status quo and did not materially alter the status of the case on

appeal.").  The Court further does not find maintaining jurisdiction here to adjudicate whether a probation violation has occurred, materially alters the status of the case on appeal, in that the Court is not amending the original order (judgment) imposing the probation sentence that is the subject of the appeal before the Ninth Circuit.  In contrast, the issue before this Court relates to whether Defendant is in violation of a condition of his probation, namely his failure to pay his fine and assessments.  While adjudication of both issues requires looking to the imposed fine and sentence, the Court agrees with the Government that this Court will not be passing judgment on the validity of the underlying sentence when adjudicating Defendant's probation violation.

In *Nat. Res. Def. Council*, the Ninth Circuit explained that an exception to the jurisdictional transfer principle has been codified in Federal Rule of Civil Procedure 62:

> Once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed. *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam); *McClatchy Newspapers v. Central Valley Typographical Union No. 46,* 686 F.2d 731, 734 (9th Cir.1982). This rule is judge-made; its purpose is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously. *Masalosalo v. Stonewall Ins. Co.,* 718 F.2d 955, 956 (9th Cir.1983); 20 James Wm. Moore, *Moore's Federal Practice,* § 303.32[1] (3d ed.2000). The principle of exclusive appellate jurisdiction is not, however, absolute. *Masalosalo,* 718 F.2d at 956; 20 *Moore's* § 303.32[2][b]. The district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo. *Newton v. Consolidated Gas Co.,* 258 U.S. 165, 177, 42 S.Ct. 264, 66 L.Ed. 538 (1922); *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888,* 536 F.2d 1268, 1276 (9th Cir.1976); *United States v. El–O–Pathic Pharmacy,* 192 F.2d 62, 79 (9th Cir.1951).

> This exception to the jurisdictional transfer principle has been codified in Rule 62(c) of the Federal Rules of Civil Procedure, which allows a district court to "suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." This Rule grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal; it "does not restore jurisdiction to the district court to adjudicate anew the merits of the case." *McClatchy Newspapers,* 686 F.2d at 734. Thus, any action taken pursuant to Rule 62(c) "may not materially alter the status of the case on appeal." Allan Ides, *The Authority of a Federal District Court to Proceed After a Notice of Appeal Has Been Filed,* 143 F.R.D. 307, 322 (1992).

> In this case, both of the district court's challenged modifications to the injunction preserved the status quo. The status quo as of the filing of Southwest Marine's consolidated appeal required Southwest Marine to conduct water column testing, including testing "at the surface," and to take steps to capture storm water runoff from piers "in a reasonably expeditious manner." The purpose of the water column testing is to determine whether blasting or painting operations conducted by Southwest Marine on each vessel in dry dock or at pier side is contributing to pollution levels in San Diego Bay. The purpose of the storm water capture requirement is to prevent Southwest Marine from discharging storm water that degrades the marine habitat of its offshore leasehold, which the district court found to be "devoid of life." The district court's post-judgment modifications to the injunction were minor adjustments that effectuated the underlying purposes of the original requirements.

Nat. Res. Def. Council, 242 F.3d at 1166–67.

The Court here is only enforcing the original requirements of the term of probation, that effectuates the underlying purpose of the original requirements of the probation term as imposed, and the Court is not amending the original sentence by enforcing its terms.  It should be noted, that at the time the appeal to the District Court was initially filed, December 3, 2020, nor at the time of the initial appearance on the probation violation, January 20, 2022, the Defendant never sought to stay the proceedings, or bring any motion for similar relief.  It was only after the nearing of his expiration of probation that Defendant now seeks court relief by way of the motion to stay.

The Court further finds the existence of Federal Rule of Criminal Procedure 38, which the Court considers below in the next subsection, to be somewhat analogous to the interplay of Federal Rule of Civil Procedure 62 with jurisdictional transfer, as discussed by the Ninth Circuit. Id. at 1167 ("This exception to the jurisdictional transfer principle has been codified in Rule 62(c) of the Federal Rules of Civil Procedure . . . [and the] Rule grants the district court no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal."); Fed. R. Civ. P. 62 ("While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."); Fed. R. Crim. P. 38(d) ("If the

defendant appeals, the court may stay a sentence of probation.").

Before turning to the Seventh Circuit's decisions that the Court finds particularly instructive, the Court now turns to the First Circuit's decision in D'Amario, that the Seventh Circuit's decisions partly flowed from.  In D'Amario, the First Circuit found that, first, the language of 18 U.S.C. § 3583(e)(2), which provides for modification, reduction, or enlargement of the conditions of supervised release "at any time" prior to the expiration or termination of the term, demonstrated that Congress had expressly authorized the district court to retain jurisdiction over and supervise the release of defendants, even during the pendency of their appeals.  Second, the First Circuit found that common sense mandated such a conclusion, as it would be an absurdity if an appeal divested the district court of authority to supervise the conditions, as then there would be no supervision at all.  Of note, the First Circuit relied on the Ninth Circuit's opinion in Phelps, and the statute in Phelps that allowed modification of conditions "at any time":

> D'Amario argues that the appeal of the 2003 district court judgment revoking his supervised release, in which he challenges the validity of the imposition of special conditions of supervised release, divests the district court of jurisdiction to alter any aspect of his supervised release. He contends that once he filed that notice of appeal, all jurisdiction over the case was transferred to the appellate court and the district court lost the authority to modify in any way the conditions it imposed prior to that appeal. We disagree.

> Pursuant to 18 U.S.C. § 3583(e)(2) and Fed.R.Crim.P. Rule 32.1(c), the district court has plenary jurisdiction to supervise a convicted defendant's release, including the jurisdiction to modify the conditions of supervised release, even though an appeal from a revocation of supervised release may be pending. The statute authorizes the district court to make such modifications throughout the entire period of supervised release, irrespective of any appeal. The statute provides that the district court "may modify, reduce, or enlarge the conditions of supervised release, *at any time* prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2) (emphasis added). Thus, Congress has expressly authorized the district court to retain jurisdiction over and supervise the release of convicted defendants, including during the pendency of their appeals.

> Even in the absence of such explicit authorization, common sense would dictate such a result. If an appeal were to divest the district court of authority to supervise the conditions of the convicted defendant's release, then there would be no such supervision at all.

This cannot be the intention of Congress. *See United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) ("absurd results are to be avoided").

Although there is apparently no case directly on point, two of our sister circuits have found that the district court retains jurisdiction under similar circumstances.   *See United States v. Phelps,* 283 F.3d 1176, 1181 n. 5 (9th Cir.2002) (holding in case of insanity acquittee that district court retained jurisdiction to monitor and modify conditions of release under 18 U.S.C. § 4243(f), despite pending appeal, where statute allowed court to modify conditions at any later time); *United States v. Meyers,* 95 F.3d 1475, 1489 n. 6 (10th Cir.1996) (district court retains jurisdiction to rule on motion for bail pending appeal). Both we and the Eighth Circuit have made clear that the district court does not lose all jurisdiction upon appeal.   *United States v. Hurley,* 63 F.3d 1, 23–24 (1st Cir.1995) (pointing out that divestiture rule is not absolute and holding that district court retains jurisdiction to modify restitution order); *United States v. Vanhorn,* 296 F.3d 713, 721 (8th Cir.2002) (district court retains jurisdiction to modify restitution order).

Accordingly, we conclude that the district court had jurisdiction to modify the conditions of D'Amario's supervised release.

United States v. D'Amario, 412 F.3d 253, 255 (1st Cir. 2005).

The Seventh Circuit adopted the reasoning in D'Amario as applied to supervised release.

United States v. Ramer, 787 F.3d 837, 838–39 (7th Cir. 2015) ("We agree with the First Circuit's conclusion and hold that the district court retained jurisdiction to modify the  conditions of Mr. Ramer's supervised release while this appeal was pending.").  The holding in Ramer was then extended in Taylor, the most on-point case the Court has located on the issues before it.  In Taylor, the Seventh Circuit held that the holding in Ramer that applied to Section 3583(e)(2) be extended to the analogous language in Section 3563(c):

An initial question is whether the district court had jurisdiction to enter the December 22, 2014 order modifying Taylor's conditions of probation. Because the district court's order came after Taylor filed his notice of appeal of his criminal conviction, one might wonder whether the district court had the authority to modify the conditions of Taylor's probation as it did. *See Griggs v. Provident Consumer Disc., Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). The government and Taylor both took the position during briefing that the district court had the authority, by virtue of 18 U.S.C. § 3563(c), to modify Taylor's conditions of probation even though the appeal of his conviction was pending in our court. Nonetheless, we must fulfill

our independent obligation to ensure that federal courts have subject-matter jurisdiction throughout the proceedings. *See United States v. Beard,* 745 F.3d 288, 291 (7th Cir.2014).

The statute at issue, 18 U.S.C. § 3563(c), provides that "[t]he court may modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation...." The question is whether the words "at any time" in the statute give the district court the authority to enter the order modifying the conditions of probation when it did.

After the oral argument in this case, we considered an analogous situation in *United States v. Ramer,* 787 F.3d 837 (7th Cir.2015) (per curiam). There, a defendant was convicted of conspiracy to commit wire fraud and sentenced to forty-two months' imprisonment and three years of supervised release. *Id.* at 838. One special condition of supervised release ordered the payment of restitution "at a rate of not less than $100 per month." The defendant filed an appeal, arguing that the restitution order should have been premised on his ability to pay. While briefing was taking place in our court, the district court amended its judgment to condition the defendant's restitution payment obligation on the defendant's ability to pay. *Id.*

Our first question was whether the district court had jurisdiction to revise the judgment since the defendant had already filed his notice of appeal. We recognized that ordinarily, filing a notice of appeal means the district court no longer has jurisdiction. *Id.* (citing *United States v. Brown,* 732 F.3d 781, 787 (7th Cir.2013) and *United States v. McHugh,* 528 F.3d 538, 540 (7th Cir.2008)). But we recognized there are exceptions. *Id.* (collecting cases). We assessed whether another exception to the general rule existed in 18 U.S.C. § 3583(e)(2), which provides that district courts may "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." *Id.* Consistent with the First Circuit's decision in *United States v. D'Amario,* 412 F.3d 253 (1st Cir.2005), we held that Congress's use of "at any time" in 18 U.S.C. § 3583(e)(2) meant that the district court retained jurisdiction to modify the defendant's conditions of supervised release even while his appeal was pending. *Ramer,* 787 F.3d at 838–39.

*Ramer* resolves the jurisdictional issue for us and means that the district court had jurisdiction to modify Taylor's conditions of probation. The statute at issue for Taylor, 18 U.S.C. § 3563(c), contains the exact same language allowing for modification "at any time" as does 18 U.S.C. § 3583(e)(2), the supervised release provision at issue in *Ramer;* the only difference is that one applies to conditions of probation and the other to conditions of supervised release. That difference is not material here, so the district court had jurisdiction to modify Taylor's conditions of probation as it did.

That is certainly not to say that the district court can make any

change it wishes after a notice of appeal has been filed. *See, e.g., Brown,* 732 F.3d at 787 (district court lacked jurisdiction to recalculate guidelines range after notice of appeal filed); *McHugh,* 528 F.3d at 540 (district court lacked authority to make non-clerical change to sentence after notice of appeal filed); *see also In re Teknek, LLC,* 563 F.3d 639, 650 (7th Cir.2009).

United States v. Taylor, 796 F.3d 788, 790–92 (7th Cir. 2015).[2]

This Court notes that the Seventh Circuit pondered the holding.  First, in his concurrence in Taylor, Circuit Judge Easterbrook noted the question of whether the statute's language of "at any time" refers to timing rather than jurisdictional authority, and opined that perhaps the jurisdictional question should be revisited in a case where the parties disagreed and the issue was more fully briefed, rather than simply extending the holding from Ramer:

> The statute governing probation, 18 U.S.C. § 3563(c), says the same thing as § 3583(e)(2), so *Ramer* logically covers probation as well as supervised release. But I do not find *Ramer* persuasive. It does not consider the possibility that "at any time" refers to how long after a judgment a court may act, rather than which court has authority to act.

> Before the Sentencing Reform Act of 1984, district courts could modify sentences long after they had been imposed. See, e.g., *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), discussing the old version of Fed.R.Crim.P. 35. Until Rule 35's adoption, "[t]he beginning of the service of the sentence in a criminal case end[ed] the power of the court even in the same term to change it." *United States v. Murray,* 275 U.S. 347, 358, 48 S.Ct. 146, 72 L.Ed. 309 (1928). The 1984 Act moves back toward a system of determinate sentencing, amending Rule 35 to allow a district court to modify a sentence only on remand from a court of appeals, or in response to a motion by the prosecutor based on assistance in other defendants' cases. Change also is possible under retroactive amendments to the Guidelines, and Rule 35 has been amended to allow correction of technical gaffes within 14 days of a sentence's imposition. The 1984 Act left in place, however, the two statutes I have mentioned, which treat

---

[2]  As for the cases cited for the caveat that the district court cannot "make any change it wishes after a notice of appeal," Taylor, 796 F.3d 788, 792, those cases involved a substantive change amending the sentences that were under appeal.  See United States v. Brown, 732 F.3d 781, 787 (7th Cir. 2013) ("Here, the judge filed the written statement of reasons sua sponte, after the notice of appeal was filed, as an attachment to an amended judgment correcting a clerical error.  The written statement purported to recalculate the guidelines range and thus differed in substance from the judge's oral explanation of the sentence.  Because jurisdiction had shifted to this court, the judge lacked authority to make this substantive change, so we will disregard it"); United States v. McHugh, 528 F.3d 538, 540 (7th Cir. 2008) ("First, in criminal cases district courts may correct errors only within seven days of sentencing . . . Second, a district court may not interfere with this court's jurisdiction by amending a decision that is under appellate review.").

probation and supervised release as special situations, because they entail ongoing monitoring that may last long after release from prison.

To say that the 14–day limit does not apply to probation and supervised release is not at all to say that a district court may act while the same judgment is being contested on appeal. Nothing in the text of § 3563(c) or § 3583(e)(2) speaks to jurisdiction, and the Supreme Court insists that jurisdictional rules be set out in jurisdictional terms. Rules about time for action do not affect jurisdiction. See *Eberhart v. United States*, 546 U.S. 12, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (holding this about Fed.R.Crim.P. 33 in particular); see also, e.g., *United States v. Kwai Fun Wong*, —— U.S. ——, 135 S.Ct. 1625, 191 L.Ed.2d 533 (2015); *Henderson v. Shinseki,* 562 U.S. 428, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011); *Dolan v. United States,* 560 U.S. 605, 130 S.Ct. 2533, 177 L.Ed.2d 108 (2010). (The rare exceptions to this norm rest on historical practice. See *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008); *Bowles v. Russell,* 551 U.S. 205, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007). A district court's authority to modify terms of release while an appeal is pending does not have the support of established practice.)

The panel in *Ramer* did not discuss the difference between timing rules and jurisdictional rules, and that omission is understandable. The parties had not discussed jurisdiction in their briefs; the panel did so on its own, without calling for submissions from the parties. The parties have not briefed jurisdiction in this appeal either. And *United States v. D'Amario,* 412 F.3d 253 (1st Cir.2005), which *Ramer* followed, preceded *Eberhart* and other cases in the last decade that distinguish timing rules from jurisdictional rules. (*D'Amario* also did not cite pre–2005 decisions about this topic. The modern doctrine begins with *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).)

Nor did *Ramer* discuss the effect of its holding on other rules and statutes that allow a district court to modify a judgment. Take Fed.R.Civ.P. 60(b), some parts of which allow a judgment to be modified years after its entry. Or take Fed.R.Crim.P. 12(b)(2) and Fed.R.Civ.P. 12(h), both of which say that a district court may dismiss a case "at any time" after concluding that subject-matter jurisdiction is missing. The civil and criminal rules contain many more "any time" references. (The phrase "at any time" appears 14 times in the criminal rules and 19 times in the civil rules.)

I had supposed, until *Ramer,* that such rules do not affect the allocation of jurisdiction between trial and appellate courts. Indeed, one of the "at any time" references appears in Fed.R.Crim.P. 36, which we held in *McHugh* does not permit a district court to act while an appeal on the same subject is pending. *Ramer* upsets this understanding, though perhaps accidentally. It does not discuss any of these rules and, though it cites *McHugh,* does not recognize that *McHugh* concerns an "at any time" clause. So although I am content to follow *Ramer* today, I do not view the issue as closed.

15

> We appear to have an intra-circuit conflict that needs a fresh look with the benefit of briefs.

Taylor, 796 F.3d at 797–98 (Easterbrook, J., concurring).

The Defendant in Ray, asked the Seventh Circuit "to take the 'fresh look with the benefit of briefs' for which [Judge Easterbrook's] concurring opinion called." United States v. Ray, 831 F.3d 431, 438 (7th Cir. 2016).[3]   In Ray, the Seventh Circuit, to avoid future issues, without overruling precedent and without directly addressing jurisdiction, held as follows:

> Ray wants us not only to overrule recent precedents but also to create a conflict among the circuits. (As far as we can see, no circuit other than the First and the Seventh has addressed the issue.) We are reluctant to do either, if an alternative is available. And we think that one is available. We hold today that, whether or not it possesses jurisdiction to revise the conditions of supervised release while an appeal is pending, a district court should not exercise that jurisdiction without receiving permission under Circuit Rule 57—and it should not seek that permission in the absence of strong reasons that are lacking in Ray's case.
>
> One important reason is that *Thompson* and its successors call for full resentencing when the district court imposes unjustified or vague conditions of supervised release. *Thompson* recognized that there may be a relation between the conditions of supervised release, or among the conditions themselves, that is best assessed by reconsidering the sentence as a package. A change in one condition may call for another to be strengthened—or abandoned. And changes that may make supervised release less (or more) effective as a punishment or deterrent could call for a term of imprisonment that is longer (or shorter).

Ray, 831 F.3d at 438.

Thus while perhaps not a settled issue, the courts of appeal that have looked most closely at similar circumstances have found there to be jurisdiction by the district courts to modify conditions of conditional release under 18 U.S.C. § 4243(f), Phelps, 283 F.3d at 1180–81 n. 5 (9th Cir.); to modify conditions of supervised release under 18 U.S.C. § 3583(e)(2), D'Amario, 412 F.3d at 255 (1st Cir. 2005); Ramer, 787 F.3d at 838–39 (7th Cir. 2015); and to modify conditions of probation under 18 U.S.C. § 3563(c), Taylor, 796 F.3d at 790–92 (7th Cir. 2015). The Court now turns to consider the caselaw proffered by Defendant in his motion.

---

[3]  Similarly, in Miller, the Seventh Circuit noted Judge Easterbrook's concurrence, and stated "this case is not a good candidate for the closer look at these issues that he recommended." United States v. Miller, 641 F. App'x 563, 567 (7th Cir. 2016).

1   Defendant directs the Court to <u>Ransom</u>.  There, the Second Circuit confronted the issue

2   of a district court amending a judgment that was under appeal.  <u>Ransom</u>, 866 F.2d at 576.[4]  The

3   court noted the Ninth Circuit employed a more flexible approach to jurisdictional transfer where

4   correcting a clear illegality in a sentence: "[t]he Government invites us to follow the more

5   flexible approach of the Ninth Circuit, which has held that a district court may grant a motion to

6   reduce sentence under Fed.R.Crim.P. 35(a), after notice of appeal, to correct a clear illegality."

7   <u>Ransom</u>, 866 F.2d at 576 (citing <u>Doyle v. United States</u>, 721 F.2d 1195, 1197 (9th Cir. 1983)).

8   In <u>Doyle</u>, the Ninth Circuit upheld the correcting or amending of an illegal sentence that

9   was under appeal.  The Ninth Circuit relied upon Rule 35(a), which at that time contained the

10  words "at any time": "Federal Rule of Criminal Procedure 35(a) provides that a trial court 'may

11  correct an illegal sentence at any time[,]' "  <u>Doyle</u>, 721 F.2d at 1197.  The court noted the Ninth

12  Circuit had "not previously dealt with the interaction between Rule 35(a) and the transfer of

13  jurisdiction rule," and that "[o]ther circuits that have faced the question are in conflict[, with the

14  Sixth Circuit holding there was jurisdiction, and the Seventh Circuit holding there was not]."  <u>Id.</u>

15  (citing <u>United States v. Schiffer</u>, 351 F.2d 91, 96 (6th Cir. 1965); <u>United States v. Hill</u>, 447 F.2d

16

17  [4]  Specifically, the sentence was amended in four ways:

18     On March 2, 1988, Ransom filed a notice of appeal. The notice stated that appeal was taken from a
       judgment and an order entered on February 17, 1988. That was the date of the oral pronouncement

19     of sentence, though the formal judgment and commitment order was entered five days later.

20     On March 7, 1988, Judge Walker entered an amended judgment and commitment order. The new
       judgment made four changes. First, the two-year term of supervised release was dropped.

21     Supervised release is a form of punishment authorized by the Sentencing Reform Act of 1984,
       Pub.L. No. 98-473, tit. II, § 212(a)(2), 98 Stat.1987 (codified at 18 U.S.C. § 3583 (Supp. IV

22     1986)), for those convicted of offenses occurring after November 1, 1987. Judge Walker had
       recognized at the time of sentencing that the new sentencing statute did not apply to Ransom's

23     offense, which had been committed prior to November 1, 1987. Nevertheless, a term of supervised
       release was inadvertently included in the sentence.

24     The second change in the March 7, 1988, amended judgment was to specify restitution as an
       absolute requirement, instead of as a condition of supervised release. Third, the amended judgment

25     clarified that payment of the portion of restitution to be paid out of Ransom's salary was to occur
       when Ransom was released on the probation ordered by Judge Ward, whereas Judge Walker's

26     original judgment had said only that payment would begin "upon release." Finally, the amended
       judgment omitted the prohibition on Ransom's engaging in mail order sales, presumably because

27     this prohibition had been contained in Judge Ward's sentence, though that prohibition is to last
       only for the duration of the term of probation.

28  <u>Ransom</u>, 866 F.2d at 575.

817, 819 (7th Cir. 1971).  The Ninth Circuit held "the trial court retains jurisdiction to correct sentence under Rule 35(a) while appeal is pending."  Doyle, 721 F.2d at 1198.

Prior to 1986, Rule 35(a) provided: "The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence."  Following amendment, the Rule now reads: "Correcting Clear Error. Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."  Fed. R. Crim. P. 35(a).

Following amendment, and before the ruling in Phelps, 283 F.3d 1176 (9th Cir. 2002), the Ninth Circuit acknowledged Doyle as a pre-amendment decision, and no longer applicable to Rule 35(a):

> The filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 401, 74 L.Ed.2d 225 (1982). The application of this general rule to Rule 35(a) motions has been the subject of conflict among the circuits. *See Doyle v. United States,* 721 F.2d 1195, 1197-98 (9th Cir.1983) (listing cases). The conflict arose, in part, because Rule 35(a) used to state that a court could "correct an illegal sentence at any time." Fed.R.Crim.P. 35(a), *Federal Criminal Code and Rules,* (1987 Edition). Some circuits nonetheless applied the general rule and held that the filing of a direct appeal divested the trial court of jurisdiction over Rule 35(a) motions. *See United States v. Prows,* 888 F.2d 100, 101 (11th Cir.1989) (citing *Shewchun v. United States,* 797 F.2d 941, 942 (11th Cir.1986)). Others, including our own, held that it did not. *See Doyle,* 721 F.2d at 1198.
>
> Congress has since amended Rule 35(a), and it is now clear that a district court is divested of jurisdiction once a notice of appeal has been filed from the original sentence. *See* Fed.R.Crim.P. 35(a), *Federal Criminal Code and Rules,* (1991 Edition). The amended rule provides that district courts are to "correct a sentence that is determined on appeal ... to have been imposed in violation of law, ... upon remand of the case to the court." Fed.R.Crim.P. 35(a). The purpose of the revision was to ensure that "the sentence imposed in the public forum during the sentencing hearing would remain constant, immune from later modification." *United States v. Cook,* 890 F.2d 672, 674-75 (4th Cir.1989) (citing legislative history).
>
> The district court therefore lacked jurisdiction to hear on January 27, 1992, the oral motion made pursuant to Federal Rule of Criminal Procedure 35(a). The government's reliance on *Doyle,* 721 F.2d at 1198, is misplaced, as that case was decided

in 1983 and applied the unamended version of Rule 35(a). Thus, we hold the district court did not have jurisdiction to hear the Rule 35(a) motion.

United States v. Ortega-Lopez, 988 F.2d 70, 72 (9th Cir. 1993), as amended (May 28, 1993). Therefore, the Court does not find Ransom persuasive, and rather finds the Ninth Circuit's previous holding in Doyle, in relation to the changed language of Rule 35(a), to be persuasive in finding jurisdiction here, in light of the later holding in Phelps that relied on the "at any time" language, and the Seventh Circuit's decisions discussed above.[5]

Further, Ransom, in addition to the court stating the issue "was not technically, a matter of jurisdiction," like other cases in support of Defendant's position, involved amendment of the actual order that was under appeal:

A notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). That rule applies in criminal cases. *Berman v. United States,* 302 U.S. 211, 214, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937); *United States v. Katsougrakis,* 715 F.2d 769 (2d Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). Though we have recognized that the rule does not preclude a district court, after notice of appeal has been filed, from "correcting clerical errors under Fed.R.Crim.P. 36 or from acting to aid the appeal," *id.* at 776 n. 7, we have not relaxed the rule to the point of permitting substantive modifications of judgments. The fact that the principal change made in this case, the elimination of supervised release, benefits the appellant is not a reason for deeming the District Court authorized to act after notice of appeal has been filed.

The Government invites us to follow the more flexible approach of the Ninth Circuit, which has held that a district court may grant a motion to reduce sentence under Fed.R.Crim.P. 35(a), after notice of appeal, to correct a clear illegality. *Doyle v. United States,* 721 F.2d 1195 (9th Cir.1983); *see also United States v. Edwards,* 800 F.2d 878, 883 (9th Cir.1986) (viewing *Doyle* as a "mechanical" correction of a clear illegality). However, we agree with those circuits that have ruled that a district court may not grant a Rule 35 motion pending appeal of a judgment, even to correct an illegal aspect of a sentence. *United States v. Mack,* 466 F.2d 333, 340 (D.C.Cir.1971), *cert. denied,* 409 U.S. 952, 93 S.Ct. 297, 34 L.Ed.2d 223 (1972); *United States v. Hill,* 447 F.2d 817, 819 (7th

---

[5] Defendant also cites to Najjor, however, there the court relied on Rule 35 and the holding in Ortega-Lopez in and thus the Court finds Phelps and the other case law above to be more persuasive than Najjor.  See Najjor, 255 F.3d at 983 (9th Cir. 2001) (citing Ortega-Lopez, 988 F.2d 70, 72).

1

2

3

4

> Cir.1971). Though some inefficiency may occasionally result from the need to return a case for resentencing, it is preferable to have a district court act to modify a judgment substantively only in the absence of a pending appeal. If not technically a matter of jurisdiction, *see* 9 *Moore's Federal Practice* ¶ 203.11, at 3-45 n. 1 (2d ed. 1988), this approach promotes the orderly conduct of business in both the trial and appellate courts.

5 Ransom, 866 F.2d at 575–76.

6      Defendant also argues that recently under the First Step Act, numerous courts, including

7 a court in the Eastern District, have held that they did not have jurisdiction to consider a

8 defendant's motion to reduce a sentence when the underlying sentence was being appealed to the

9 Circuit Court.  First, the Court largely finds these cases distinguishable in that the courts faced

10 motions that directly challenged or requested modification of the sentence under appeal.  The

11 Court is not undertaking such action here.  See Velazquez, 2020 WL 5846612, at *3 ("A direct

12 appeal challenging the court's sentence and a motion for compassionate release both review the

13 facts underlying Defendant's offenses, her history and circumstances, and applicable

14 enhancements and sentencing guidelines."); Hirano, 2022 WL 1540230, at *2 ("The Court can

15 easily imagine a scenario where it renders a decision on the Motion in a fashion that either moots

16 the appeal or creates a conflict with whatever decision the Ninth Circuit renders on the

17 appeal[.]").  Further, the Court again reiterates that it finds Phelps and the Seventh Circuit law

18 above more applicable to the statutes and Rules involved here, rather than Ortega-Lopez and the

19 decisions that rely on it.

20      In Melkonyan, the court relied on Ortega-Lopez, acknowledging it was dealing with a

21 different statute:

22

23

24

25

26

27

28

> The procedural posture of this case divests this Court of the jurisdiction necessary to consider Defendant's motion. Defendant filed this motion after he filed a notice of appeal in this Court. See ECF No. 290. "The filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." United States v. Ortega-Lopez, 988 F.2d 70, 72 (9th Cir. 1993) (citing Griggs v. Provident Consumer Discount Co., 459 U.S. 46, 58 (1982)) (internal quotation marks omitted). And although Ortega-Lopez held the district court lacked jurisdiction to modify a sentence under Federal Rule of Criminal Procedure 35(b), not under 18 U.S.C. § 3582(c), "there is no basis for distinguishing between these two types of modifications for

jurisdictional purposes." United States v. Maldonado-Rios, 790 F.3d 62, 64 (1st Cir. 2015). On appeal, Defendant challenges the length of his sentence. See Opening Appellate Brief at 29–36. Thus, his sentence is directly involved in the appeal. Accordingly, this Court is divested of its ability to reduce Defendant's sentence. See Ortega-Lopez, 988 F.2d at 72 ("[A] district court is divested of jurisdiction once a notice of appeal has been filed from the original sentence.").

Melkonyan, 2020 WL 2128591, at *1 (E.D. Cal. May 5, 2020). Given the discussion above, the Court finds it significant that 18 U.S.C. § 3582 does not contain an "at any time" provision, and rather contains multiple restrictive provisions, in fact referencing Rule 35 in part. See 18 U.S.C. § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except . . . [among other exceptions,] the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."). In fact, in Velazquez, the court relied on the finding that there was no basis to distinguish between Rule 35(b) and Section 3582(c), in applying the holding of Ortega-Lopez:

> While the court in *Ortega-Lopez* addressed the district court's jurisdiction to modify a sentence under Federal Rule of Criminal Procedure 35(b), its analysis applies with equal force to motions under 18 U.S.C. § 3582(c). As the First Circuit noted, there is "no basis for distinguishing between" § 3582(c) and Rule 35(b) "for jurisdictional purposes." *United States v. Maldonado-Rios*, 790 F.3d 62, 64 (1st Cir. 2015) (per curiam) (holding the district court lacked jurisdiction to reduce the defendant's sentence because the defendant's appeal was pending when the district court ruled on the defendant's motion under § 3582(c)(2)).

Velazquez, 2020 WL 5846612, at *2. Therefore, the Court does not find Melkonyan or other cases that employed similar reasoning that depended on Ortega-Lopez and Rule 35, to be largely applicable or persuasive here. See Velazquez, 2020 WL 5846612, at *2 (citing Melkonyan, 2020 WL 2128591, at *1; Ortega-Lopez, 988 F.2d at 72); Hirano, 2022 WL 1540230, at *2 ("The Ninth Circuit has yet to address the question of whether district courts have jurisdiction to hear compassionate release motions while appeals of sentences are pending[,] [h]owever, a few district courts have concluded that they do not, and the Court is persuaded by their reasoning . . . *Velazquez* provides a detailed analysis of the issue, and collects cases.").

The Court finds the Government's position more supported in light of the Court's review

of the various statutes, rules, and caselaw.  See Phelps, 283 F.3d at 1180–81 n. 5; D'Amario, 412 F.3d at 255; Ramer, 787 F.3d at 838–39; Taylor, 796 F.3d at 790–92; 18 U.S.C. § 4243(f); 18 U.S.C. § 3583(e)(2); 18 U.S.C. § 3563(c); 18 U.S.C. § 3565(a); Fed. R. Crim. P. 35(a); Fed. R. Crim. P. 38.  The Court further finds the procedure under Rule 38, and practical considerations, additionally counsel against Defendant's position.  See Fed. R. Crim. P. 38(c)-(d); D'Amario, 412 F.3d at 255 ("Even in the absence of such explicit authorization, common sense would dictate such a result.  If an appeal were to divest the district court of authority to supervise the conditions of the convicted defendant's release, then there would be no such supervision at all. This cannot be the intention of Congress.").  The Court thus finds it maintains jurisdiction, and now turns to consider the factors under Federal Rule of Criminal Procedure 38.

### B.      Whether a Stay is Appropriate Under Rule 38

Defendant submits that even if the Court has jurisdiction, the Court should grant a stay pursuant to Federal Rule of Criminal Procedure 38.  The Rule provides that: "[i]f the defendant appeals, the district court, or the court of appeals under Federal Rule of Appellate Procedure 8, may stay a sentence to pay a fine or a fine and costs."  Fed. R. Crim. P. 38(c).  As to probation, the Rule provides that: "[i]f the defendant appeals, the court may stay a sentence of probation[, and] [t]he court must set the terms of any stay."  Fed. R. Crim. P. 38(d).  The parties largely agree as to the relevant standards to consider when deciding whether to grant a stay.  (See Mot. 5-6; Opp'n 4.)

"A stay is an intrusion into the ordinary processes of administration and judicial review . . . and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant."  Nken v. Holder, 556 U.S. 418, 427 (2009) (internal quotations and citations omitted).  Courts are to consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  Nken, 556 U.S. at 426 (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)); see also United States v. Bical, 409 F. Supp. 3d 51, 52 (E.D.N.Y. 2019).  "The first two factors of the traditional standard are the most critical."  Nken,

556 U.S. at 434.  The Ninth Circuit has stated that: "In sum, and for the sake of clarity, we hold that in light of <u>Nken</u>'s impact on our prior precedent, a petitioner seeking a stay of removal must show that irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor."  <u>Leiva-Perez v. Holder</u>, 640 F.3d 962, 970 (9th Cir. 2011).

> 1.   <u>Likelihood of Success</u>

The Ninth Circuit has noted "[t]here are many ways to articulate the minimum quantum of likely success necessary to justify a stay—be it a 'reasonable probability' or 'fair prospect,' . . . 'a substantial case on the merits,' . . . [or] that "serious legal questions are raised."  <u>Leiva-Perez</u>, 640 F.3d at 967–68 (citations omitted) ("We think these formulations are essentially interchangeable, and that none of them demand a showing that success is more likely than not."). "Regardless of how one expresses the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits."  <u>Id.</u>

Defendant submits that it is well established that while a sentence of probation is more lenient than incarceration, it still results in a substantial restriction on liberty.  <u>See</u> <u>Gall v. United States</u>, 552 U.S. 38, 48 (2007) ("We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms [but] [o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty."). Defendant submits that it is equally well established that a defendant's socio-economic status is irrelevant to sentencing.  <u>See, e.g.</u>, <u>Bearden v. Georgia</u>, 461 U.S. 660, 667–68 (1983) ("In other words, if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it."); U.S.S.G. § 5H1.10 (entitled "Race, Sex, National Origin, Creed, Religion, and Socio-Economic Status (Policy Statement)[,]" stating "[t]hese factors are not relevant in the determination of a sentence.").

Defendant argues he has made a strong showing that he is likely to succeed on the merits of his appeal as he challenged the sentence as both procedurally flawed and substantively

unreasonable.  (Mot. 6.)  Defendant argues that he has clearly met the standard as there is a substantial case on the merits and serious legal questions as to whether this Court not only procedurally erred in considering "his indigency in fashioning a sentence, but also whether the resulting sentence imposing a 24 month probationary term (double than what is typically imposed) to pay a fine more than twice the amount than the parties had jointly recommended was substantively reasonable."  (Mot. 7.)

The Government responds that Defendant has not made a strong showing that he is likely to succeed on the merits, highlighting that unless a sentencing court commits procedural error, such as failing to consider the Section 3553 factors, relying on clearly erroneous facts, or failing to explain the sentence, an appellate court reviews the reasonableness of the sentence under the deferential abuse of discretion standard.  See Gall, 552 U.S. at 51 (the court of appeal "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range," and then "[a]ssuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.").  The Government emphasizes the "[p]ractical considerations [that] underlie this legal principle [as] [t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.' "  Id.  (citation omitted).

The Government argues the Defendant's claim of procedural error is weak, not supported by the record, and has already been rejected by the district court.  (See Case #1:20-cr-230, ECF No. 280.)  The Government notes that in its decision, the District Judge ruled that the Magistrate Judge did not commit procedural error and that the Defendant's cited authority was "inapplicable" to the facts of this case.  (Id.)  The Government also highlights the District Judge court noted that Defendant's claim that the Court inappropriately considered his "indigency" is

1  plainly belied by the record where Defendant himself indicated he had a full time job and could

2  pay a fine if given a payment plan.  (Id. citing Tr., ECF No. 19 at 18.)

3         The Government further argues the Defendant's claim of substantive unreasonableness is

4  also weak, not supported by the record, will be reviewed under the deferential abuse-of-

5  discretion standard, and has already been rejected by the District Court.   The Government

6  submits that as the District Court properly concluded, this Court appropriately applied the

7  Section 3553(a) factors, and did not abuse its discretion in imposing the sentence in this case.

8  (Case No. 1:20-cr-230, ECF No. 28.)

9         Given the legal issues presented on appeal, and the District Court's decision affirmation

10 of the sentence, the Court does not find Defendant has demonstrated a substantial case for relief

11 on the merits, at least not substantial enough to outweigh the other factors that weigh in favor of

12 a stay.  See Leiva-Perez, 640 F.3d at 970 (movant "must show that irreparable harm is probable

13 and either: (a) a strong likelihood of success on the merits and that the public interest does not

14 weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of

15 hardships tips sharply in the petitioner's favor.").

16        2.    Irreparable Harm

17        Defendant submits that if a stay is not granted, the Court will proceed to adjudicate the

18 Petition alleging a violation of probation, and Defendant will not only face an increased fine

19 amount, but also possible imprisonment.  (Mot. 7.)  Even if a term of imprisonment is not

20 imposed, Defendant highlights the term of probation would either be extended or revoked and a

21 new term imposed, and Defendant cannot un-serve any time he serves either in prison or on a

22 further or extended term of probation.  Additionally, Defendant would need to either borrow

23 money or drastically adjust his finances to pay any increased fine, and while it can be

24 reimbursed, the other conditions of probation cannot be repaid if Defendant prevails on appeal.

25        The Government responds that Defendant will not be irreparably harmed if the Court

26 continues to keep him on probation and adjudicate his probation violation because if his violation

27 is revoked, and defendant is re-sentenced, he will have the opportunity to appeal that sentence

28 and seek an additional stay as he sees fit.  Additionally, the Government highlights that if that

1   sentence involves a term of imprisonment, such a stay will be mandatory unless he is detained

2   pending appeal, which the Government submits is unlikely in a misdemeanor case such as this

3   one.  See Fed. R. Crim. P. 38(b) ("If the defendant is released pending appeal, the court must

4   stay a sentence of imprisonment.").

5        Even accepting that some form of "irreparable harm is probable," the Court finds any

6   demonstration of irreparable harm is slight.  See Fed. R. Crim. P. 38(b); (Case No. 1:20-cr-230,

7   ECF No. 28 at 4 ("While incarceration serves the aim of punishment, probation fulfills rehabilitative

8   ends, assisting individuals transition to community life.") (citing United States v. Johnson, 529

9   U.S. 53, 59 (2000)).).[6]  The Court does not additionally find "either: (a) a strong likelihood of

10  success on the merits and that the public interest does not weigh heavily against a stay; or (b) a

11  substantial case on the merits and that the balance of hardships tips sharply in the petitioner's

12  favor."  Leiva-Perez, 640 F.3d at 970.

13       3.    Effect on Opposing Party and Public Interest

14       Under these two merged factors, Defendant notes that notwithstanding the

15  acknowledgement of public interest "in prompt execution of removal orders," the Ninth Circuit

16  in that case held these factors weighed in favor of a stay insofar as there was "public[] interest in

17  ensuring that we do not deliver aliens into the hands of their persecutors[,]" and "the fact that

18  [the petitioner] was not currently detained, and therefore the government [was] incurring no

19  expense while [the petition sought] judicial review."  Leiva-Perez, 640 F.3d at 971.[7]  Here,

20  Defendant argues that these factors also weigh in favor of a stay as the public has an interest in

21  ensuring that courts rely on permissible factors in fashioning a sentence and that individuals do

22  not receive harsher sentences because they are poor.  Defendant also argues that because he is

23  not currently detained, the Government incurs no expense while there is judicial review ongoing.

24

25  [6]  The Court notes that the Johnson Court was speaking to the related context of supervised release.  Johnson, 529 U.S. at 59 ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.").

26  [7]  The Court notes the Ninth Circuit received no opposition to those arguments, stating "[t]he government has made
27  no arguments to the contrary, nor any showing as to whether the Department of Homeland Security will actually take steps to remove Leiva–Perez relatively soon if the stay is denied [and] [o]n these facts, the public interest
28  weighs in favor of a stay of removal."  Leiva-Perez, 640 F.3d at 971.

1  (Mot. 8.)

2    The Court does not find Defendant's arguments convincing.  Although there is some

3  merit to the concern of indigent defendants and criminal sentencing, although admittedly a likely

4  greater concern than most civil appeals, the desire for correct legal decisions is inherent in any

5  matter that is appealed, and the Court does not find it to override the public's interest weighing

6  the stay in this matter.  Specifically, the Court places great weight on the public's interest in

7  ensuring that probation sentences are promptly imposed for the safety of the public, as well as to

8  begin the rehabilitative process for probationers in relation to the public.  The Court

9  acknowledges Defendant's argument highlighting that while he timely appealed his sentence to

10  the District Court, it took twenty months for the appeal, and was a circumstance beyond

11  Defendant's control.[8]  Nonetheless, the Court concludes a stay of Defendant's probation

12  proceedings harm the Government and the public interest, as Defendant's probation term will be

13  paused, and the Government's ability to supervise Defendant will be halted.  The Court agrees

14  with the Government that there is a strong public interest both for the community and the

15  Defendant in keeping him on probation.  See Johnson, 529 U.S. at 59.

16    The Court concludes that Defendant has not shown irreparable harm is probable and

17  either: (a) a strong likelihood of success on the merits and that the public interest does not weigh

18  heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships

19  tips sharply in the petitioner's favor.  See Leiva-Perez, 640 F.3d at 970.  Therefore, the Court

20  finds the factors weigh against granting a stay.  Id.

21  / / /

22  / / /

23  / / /

24  / / /

---

25  [8]  The Court again notes that Defendant could have sought a stay of the probation sentence when the appeal was
filed with the District Court, but Defendant did not move for a stay until after the decision by the District Judge.

26  The Government contends that as he did not seek a motion to stay at the time he filed an appeal of the sentence, the
Defendant elected to waive his right to request a stay, began probation, and then only after he violated his probation

27  term, sought to avoid facing consequences for that violation by pausing those proceedings.  (Opp'n 6.)  The Court
does not find the delay to be determinative, but provides an additional factor weighing against a stay in light of the

28  public interest in ensuring probation sentences are promptly imposed.

**IV.**

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant's motion to stay sentence and probation revocation proceedings filed on November 1, 2022, (ECF No. 32), is DENIED.

IT IS SO ORDERED.

Dated:   **November 15, 2022**

UNITED STATES MAGISTRATE JUDGE

28